DAREN ROSS,                  )
                                  )
       Plaintiffs,          )
                                  )      NO. 3:20-cv-00536
v.                             )      JUDGE RICHARDSON
                                  )
RICHARD KIRKPATRICK,    )
                                  )
       Defendant.      )

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Defendant's Motion to Dismiss (Doc. No. 14, "Motion") and a memorandum in support thereof (Doc. No. 14-1). Plaintiff has responded. (Doc. No. 17). Defendant has replied. (Doc. No. 18). The Motion is ripe for review.

For the reasons discussed herein, the Motion will be denied.

## <u>BACKGROUND</u>[1]

Plaintiff brings this action to recover damages resulting from a breach of contract by Defendant.[2] (Doc. No. 11). Plaintiff is a business broker who arranges and assists with the sales of

---

[1] The Court accepts the facts as stated in the Amended Complaint as true for purposes of this Motion. The Amended Complaint is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Defendant had previously moved to dismiss the prior Complaint. (Doc. No. 9). Plaintiff subsequently filed the Amended Complaint, and the Motion to Dismiss thus was rendered moot. (Doc. No. 13). Defendant then moved, via the current Motion, to dismiss the Amended Complaint. At various points in briefing, both parties respectively seem to make arguments geared towards the first Motion to Dismiss and original Complaint. The Court does not consider these arguments to the extent that they are inapplicable to the Amended Complaint and the pending Motion, which must be and is the Court's focus herein.

[2] Plaintiff Daren Ross sues Defendant Richard Kirkpatrick in this action, and neither party's respective business is involved in the litigation. At the time of the agreement, Plaintiff was doing business under the name "Green Pine Partners," which was not incorporated, a partnership, or a legal entity at the time. (Doc. No. 1 at ¶ 1). "Green Pine Partners" was instead a trade name or

companies, and he entered into a Listing Agreement with Defendant to sell Defendant's company. (*Id.* at ¶ 1). Defendant operates a business known as "Patent Designs," which provides patent drawings and other services to customers. (*Id.* at ¶ 2).

Defendant contacted Plaintiff regarding selling his business, and the two parties executed the Listing Agreement on November 10, 2019. (*Id.* at ¶¶ 10, 11). Defendant indicated at that time that an offer above $5 million would be acceptable.[3] (*Id.* at ¶ 13). The Listing Agreement provided that if Plaintiff (acting as the broker) successfully found a buyer for Defendant's company, he would receive a commission:

> 2.1 Commission.
>
> Broker shall receive a commission of the amount specified in Section 2.2 below, calculated as a percentage of the selling price of substantially all of the assets or stock of the Company (the "Selling Price") if: (1) Broker procures a buyer who is ready, willing, and able to purchase substantially all of the assets or stock of the Company on terms deemed acceptable by the Company in its sole and absolute discretion; and (2) substantially all of the assets or stock of the Company are sold to a buyer procured by the Broker during the term of this listing or if, within two years after the termination of this listing, substantially all of the assets or stock of the Company are sold to a buyer who was first submitted to the Company by the Broker.
>
> 2.1 Amount of Commission. [referred to as Section 2.2]

_____

assumed name for Plaintiff Daren Ross, and so Plaintiff Daren Ross is the only Plaintiff in this action. (*Id.*). "Patent Designs," Defendant's company, was a party to the Listing Agreement, but "Patent Designs" is not a corporation and is also instead a trade name or assumed name. (*Id.* at ¶ 3). Therefore, the only Defendant to this action is Defendant Richard Kirkpatrick. (*Id.*). In summary, to speak of a party's business is to speak of the party itself; there is no legal distinction between the two.

[3] Defendant argues that this statement before the execution of the Listing Agreement is inadmissible evidence under the parol evidence rule. (Doc. No. 14-1 at 16). In fact, the parol evidence rule is not a rule of evidence (which would be governed herein by federal law) but rather one of substantive contract law (which would be governed by the applicable state law). *Acad. Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 65 (6th Cir. 2009). Having said that, the Court realizes that, despite his phrasing, Defendant perhaps meant to make an argument of substantive contract law. But whatever the actual nature of the argument, the Court need not address it because it does not rely on this objected-to statement in deciding the Motion.

Broker's commission under Section 2.1 shall be calculated as follows:

a. Broker's commission shall be calculated as follows:

i. 9% of the first $1,000,000 of the Selling Price, plus

ii. 8% of the second $1,000,000 of the Selling Price, plus

iii. 7% of the third $1,000,000 of the Selling Price, plus

iv. 6% of the fourth $1,000,000 of the Selling Price, plus

v. 5% of the amount of the Selling Price that exceeds $5,000,000.

2.3 Payment.

Any commission earned under Section 2.1 shall be paid in full at closing, regardless of whether any portion of the sale price is due after closing. Broker shall be paid by wire. Failure to pay broker on the funding day will result in a penalty equal to an additional 3% of the entire price that the business is sold for.

2.4 Expenses.

The Company and the Broker shall each pay their own respective expenses involved in performance of their respective duties under this Agreement. In the event the Broker finds a willing buyer and the Company decides not sell, [sic] the Broker will still be owed full commission described above. This is to protect all of the time and expenses the Broker is investing into this process.

(Doc. No. 11-1 at 1l; Doc. No. 11 at ¶ 14).

After signing the Listing Agreement, Plaintiff worked to find a buyer for Defendant's company. (Doc. No. 11 at ¶ 16). Plaintiff located several potential buyers, and he recommended that Defendant not accept an offer of $5.5 million, believing that he could procure a higher offer. (*Id.* at ¶ 18). Plaintiff then procured a new buyer and negotiated a purchase price of $6.5 million for Defendant's company. (*Id.* at ¶ 18). The buyer and Defendant both executed a Letter of Intent, stating that the buyer was ready, willing, and able to proceed with a purchase at a purchase price of $6.5 million (*Id.*). Defendant "was thrilled" with the offer and began to move forward with the sale. (*Id.* at ¶ 20). With the execution of this Letter of Intent, Plaintiff believes he met his obligation under the Listing Agreement. (*Id.* at ¶ 19). Defendant and buyer thereafter entered a period of due

diligence and began to negotiate an Asset Purchase Agreement. (*Id.* at ¶ 21). In late February 2020, the period of due diligence was substantially complete, the terms of the sale were acceptable to Defendant, and the buyer was ready, willing, and able to close the deal in a matter of two weeks or less. (*Id.* at ¶ 23).

Defendant's wife objected to the sale and stated that she would not allow the sale to proceed.[4] (*Id.* at ¶ 24). Defendant then backed out of the sale. (*Id.* at ¶ 25). Plaintiff alleges that Defendant admitted to Plaintiff that he owed him commission under the Listing Agreement. (*Id.* at ¶ 30).

Plaintiff seeks $425,000 in commission payment pursuant to the Listing Agreement. (*Id.* at ¶ 26). Plaintiff also seeks $195,000 due to Defendant's failure to pay the commission on the scheduled closing day. (*Id.* at ¶ 29).

The Complaint brings a single count under Tennessee law for breach of contract.[5]

## <u>LEGAL STANDARD</u>

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

---

[4] Defendant argues that the facts recounted in this paragraph are irrelevant. (Doc. No. 14-1 at 15-16). The Court does not rely on these facts in reaching its opinion below, and so the Court does not make a determination regarding the relevancy of these facts.

[5] Without commenting on whether any other causes of action could be appropriate or on whether Plaintiff ultimately should succeed on his sole cause of action, the Court pauses to commend counsel for Plaintiff for avoiding the unfortunately rare approach of stating what he believes to be the best claim and focusing on that, rather than taking a shotgun approach of pleading umpteen causes of action, including some that are manifestly weaker than others. While acknowledging that pleading multiple causes of action is entirely appropriate in some cases, the Court wishes to note that the more focused approach can aid Plaintiff by drawing the Court's attention to what he believes to be his strongest theory, and aids the Court and both parties by avoiding expenditure of resources on potentially tangential theories and issues.

to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

Defendant and Plaintiff have differing views regarding what was required under the Listing Agreement[6] in order for Plaintiff to earn a commission and what Plaintiff must have plausibly

---

[6] Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, there is an exception to this Rule: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Herpst v. Parkridge Med. Ctr., Inc.*, No. E201700419COAR3CV, 2018 WL 4052208, at *3 (Tenn. Ct. App. Aug. 23, 2018); *Doe*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92. "It must also be clear that there exist no material disputed issues of fact

alleged in the Amended Complaint to survive a motion to dismiss. Both parties agree that Tennessee law governs the contract dispute. (Doc. No. 14-1 at 7).

A. <u>Tennessee Contract Law</u>

"A broker's right to be paid a commission is a contractual matter. As long as a broker has fully performed its contractual duties, it is entitled to a commission whether the contract is written or oral." *Mande Realty v. Deerhead Resort, Inc.*, No. 87-9-II, 1988 WL 5694, at *2 (Tenn. Ct. App. Jan. 29, 1988) (internal citation omitted); *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 819 (Tenn. Ct. App. 2011).

"A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009). "Courts must look at the plain meaning of the words in a contract to determine the parties' intent. If the contractual language is clear and unambiguous, the literal meaning controls; however, if the words are ambiguous, i.e., susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by

_____

regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (cleaned up and quotation omitted). "In other words, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss, but a genuine dispute as to the legal sufficiency of a document requires the court to consider the issue under a motion for summary judgment standard." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).

The Listing Agreement and the Letter of Intent were both attached to the Amended Complaint. Both documents were referenced in and central to the Amended Complaint. The Asset Purchase Agreement was attached to Plaintiff's Response, but it was referenced in and central to the Amended Complaint. Documents being attached to a different filing does not seem to preclude the Court from reviewing them. *See Mediacom Se. LLC*, 672 F.3d at 400 (noting that it would be appropriate to consider a document attached to a motion to intervene because it appears in the record if it is referred to in the complaint and central to the claims therein). Defendant does not seem to contest the authenticity of the documents, instead arguing that the documents should be read differently than Plaintiff suggests and/or lack certain terms Defendant believes to be material. The Court therefore finds that it can properly consider all three documents when ruling on the Motion.

a literal interpretation of the language." *Id.* (internal citation omitted). "When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written." *Union Realty Co. v. Family Dollar Stores of Tennessee, Inc.*, 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007). The Tennessee Court of Appeals has explained that:

> The rights and obligations of contracting parties are governed by their written agreements. The courts must interpret these contracts as written. We are not at liberty to make a new contract for parties who have spoken for themselves, nor are we at liberty to relieve parties from their contractual obligations simply because these obligations later prove to be burdensome or unwise.

*Hillsboro Plaza Enterprises v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993) (internal citations omitted).

However, "[w]hen contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "We generally will construe ambiguous terms against the drafter. However, the courts will not rewrite an unambiguous term simply to avoid harsh results." *Ralph v. Pipkin*, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005) (internal citation omitted). The Tennessee Supreme Court has explained the circumstances under which a court should find a contractual provision to be ambiguous:

> However, on occasion, a contractual provision may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous. *Planters Gin. Co.*, 78 S.W.3d at 890. "Ambiguity, however, does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn.2001) (internal quotation marks and citations omitted). The court will not use a strained construction of the language to find an ambiguity where none exists. *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn.1975).

*Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008).

When a contract is unambiguous, a court may determine the interpretation on a motion to dismiss as a matter of law, but when a contract is ambiguous, a court should not interpret the contract at the motion to dismiss stage. *E.g.*, *McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 1:06-CV-80, 2007 WL 896153, at *3 (E.D. Tenn. Mar. 22, 2007) ("Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes. In such a situation, contractual interpretation is a matter of law and may be addressed on a motion under Rule 12. When a contract's terms are ambiguous, however, interpretation is a question of fact and is not appropriately decided in the context of Rule 12." (internal citations omitted)); *Griggs v. LF Prod. PTE Ltd.*, No. 1:12-CV-00193, 2013 WL 4499131, at *4 (M.D. Tenn. Aug. 16, 2013) ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." (quotation omitted)); *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012) ("In reviewing a Rule 12(b)(6) motion to dismiss, the Court may resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in Plaintiffs' favor. A contract is ambiguous if its words may reasonably be understood in different ways. A court should not choose between reasonable interpretations of ambiguous contract provisions when considering a motion to dismiss under Rule 12(b)(6). In other words, the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." (internal citations omitted and cleaned up)); *BorgWarner Ithaca LLC v. Prinicpal Mfg. Corp.*, No. 18-CV-13970, 2019 WL 1952858, at *3 (E.D. Mich. May 2, 2019) (applying *Ajuba*); *cf. Perry v. Allstate Indem. Co.*, 953 F.3d 417, 432 (6th Cir. 2020) (Readler, J. concurring in part and dissenting in part) ("While it may be the majority view, we cannot say at this threshold stage, as did the district court, that [Defendant's] view is the only potentially reasonable interpretation of the policy language. True, as [Defendant] notes, one

court's aberrant decision cannot unsettle the meaning of well-defined legal terms. But that is not what we have here. Both [Defendant] and [Plaintiff's] views have ample support. All things considered, including the somewhat detailed discussion necessary to explain these competing views, we find that, at this stage, both views are reasonable. Under Ohio law, [Plaintiff's] claim therefore survives [Defendant's] Rule 12(b)(6) motion.").

There is also some case law that indicates (without distinguishing between ambiguous and unambiguous contracts) that it is generally inappropriate to interpret a contract on a motion to dismiss. *DeNune v. Consol. Capital of N. Am., Inc.*, No. 3:02CV7241, 2004 WL 1474653, at *2 (N.D. Ohio May 21, 2004) ("Contract interpretation is inappropriate for a motion to dismiss."); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, No. 2:03-MD-1565, 2006 WL 2849784, at *7 (S.D. Ohio Oct. 3, 2006) ("The Court, though, will not resolve a conflict in contract interpretation on a motion to dismiss."); *Exact Software N. Am., Inc. v. Infocon Sys., Inc.*, No. 3:03CV7183, 2004 WL 952876, at *5 (N.D. Ohio Apr. 16, 2004) (same). Taking a somewhat contrary position (one that actually theoretically favors Defendant on this Motion, though ultimately to no avail) the Court believes that it is appropriate to interpret a contract on a motion to dismiss—but only if the contract is unambiguous.

B.  Discussion of the Listing Agreement

The Court will first determine whether the Listing Agreement is unambiguous, such that the Court can interpret the contract on a motion to dismiss. As discussed, in order for Defendant to succeed on a Motion to Dismiss, he must show the Court that 1) the contract is unambiguous, such that the Court may interpret it on a Motion to Dismiss, and 2) Plaintiff has not plausibly alleged a breach of contract (as that unambiguous contract is interpreted by the Court). Defendant at no point argues that the contract is unambiguous.

The term in dispute is "willing buyer" in section 2.4 of the Listing Agreement. The Court does not believe this term to be unambiguous, and instead finds it to be ambiguous. There is no set definition of "willing buyer," and there is not only one way to think of if a buyer is "willing." There appears to be (and Defendant asserts) no stock legal definition, or other particular general definition, used for "willing buyer" in contracts. Therefore, the Court will not resolve what is required for a buyer to be "willing" for purposes of the Listing Agreement on a Motion to Dismiss, as the Court finds this to be an ambiguous term.

Plaintiff has plausibly alleged that he procured a "willing buyer" as required under section 2.4 of the Listing Agreement under at least one interpretation of "willing buyer": a buyer who was ready to proceed with the purchase. Among other things, the Amended Complaint alleges that Plaintiff obtained a buyer for and negotiated a purchase price of $6,500,000 for Defendant's company. (Doc. No. 11 at ¶ 18). The buyer and Defendant both executed a Letter of Intent, stating that the buyer was ready, willing, and able to proceed with a purchase at a purchase price of $6,500,000. (*Id.*). Defendant began to move forward with the sale. (*Id.* at ¶ 20). This all plausibly alleges that Plaintiff procured a "willing buyer" as required by section 2.4 of the Listing Agreement.

None of Defendant's arguments in his Motion succeed in showing the Court this contract is unambiguous as to its key term ("willing buyer"), such that the Court could rule as a matter of law (based on its interpretation of this term) on a motion to dismiss. As noted, Defendant does not even argue that the contract is unambiguous in any way. Instead, Defendant argues essentially that Plaintiff must plausibly allege two things in order to show that he is entitled to commission under the Listing Agreement: 1) that a buyer was "ready, willing and able" to purchase Defendant's business, which Defendant believes to mean that the potential buyer must have communicated a

legally effective offer to Defendant containing all material terms, and 2) that Defendant found all of the material terms to be acceptable. (Doc. No. 14-1). Defendant generally frames his argument around the proposition that the Listing Agreement required an offer and acceptance of a contract in order for a commission to be due. (*Id.*). That is, according to Defendant, the obligation to pay a commission was triggered only by a putative buyer making an offer on Defendant's business and Defendant then accepting such offer. To arrive at his conclusion as to what Plaintiff must prove (stated above), Defendant argues that sections 2.1 (discussing commission) and 2.4 (discussing expenses) must be read together instead of separately. (Doc. No. 14-1 at 7). Section 2.4 reads in full:

> The Company and the Broker shall each pay their own respective expenses involved in performance of their respective duties under this Agreement. In the event the Broker finds a willing buyer and the Company decides not sell [sic], the Broker will still be owed full commission described above. This is to protect all of the time and expenses the Broker is investing into this process.

(Doc. No. 11-1).

Section 2.1 sets out the circumstances under which a commission is due upon *completion of a sale*, namely, when: "(1) Broker procures a buyer who is ready, willing, and able to purchase substantially all of the assets or stock of the Company on terms deemed acceptable by the Company in its sole and absolute discretion; and (2) substantially all of the assets or stock of the Company are sold to a buyer procured by the Broker during the term of this listing or if, within two years after the termination of this listing, substantially all of the assets or stock of the Company are sold to a buyer who was first submitted to the Company by the Broker." (Doc. No. 14-1 at 1). Section 2.4 instead contemplates "the full commission described above" being paid as an "expense,"[7] in

---

[7] The Court notes that Defendant's arguments are misguided in that he does not seem to recognize that this provision prescribes an "expense" commission, separate from the commission owed when a sale is completed. Defendant claims that Plaintiff agreed to be paid only if the sale of business

order "to protect all of the time and expenses the Broker is investing into this process." (*Id.*). It then describes the situation in which commission will be owed as an expense when a sale *is not completed*: "[i]n the event the Broker finds a willing buyer and the Company decides not sell [sic], the Broker will still be owed full commission described above." (*Id.*).

Defendant encourages the Court to interpret the term "willing buyer" in section 2.4 as being equivalent to the phrase "a buyer who is ready, willing and able" used in section 2.1, and in turn to interpret the phrase "ready, willing and able" in section 2.1 as "a buyer who made a firm offer capable of acceptance by Defendant, which offer contained all material terms of the proposed contract, and with respect to which offer Defendant's acceptance would be an enforceable contract." (Doc. No. 14-1 at 10). The Listing Agreement itself never mentions such a definition for a "ready, willing and able" buyer, and never otherwise suggests that this is the proper interpretation of the term. Instead of convincing the Court as required that the Listing Agreement is unambiguous so that the Court may interpret the contract on a motion to dismiss, Defendant seems to be arguing (without ever specifically stating) that the contract is ambiguous and should be interpreted in his favor.

Additionally, at points throughout briefing, Defendant seems to be upset with the general idea that he should be required to pay a commission despite deciding not to sell his company. The Court notes that Tennessee courts have not found similar arrangements to be unfair or unreasonable, instead repeatedly allowing for commissions to be recovered without the completion of a corresponding sale. *E.g.*, *Loventhal v. Noel*, 196 Tenn. 308, 312, 265 S.W.2d 891, 893 (1954)

---

closed and that the inclusion of commission under the title "expenses" is "odd[]." (Doc. No. 14-1 at 4, 17). Defendant cannot now, based on his characterization of the contract he signed as "odd," successfully attempt to add in requirements that were never stated or mischaracterize what Plaintiff agreed to.

("The agent had rendered a valuable service to the property owner by finding a purchaser who could pay the listed price. Any difficulty the owner may have had in selling was at an end. But their laudable desire to get more money for it did not in any sense alter the fact that the complainant had done all he could to effect a sale and was therefore entitled to his commission." (collecting cases holding the same)); *Cheatham v. Yarbrough*, 90 Tenn. 77, 15 S.W. 1076, 1076 (1890) ("Under these facts, the agents were entitled to compensation, the same as if the sale had been completed, for they had done all that the law required them to do under their contract. The just and well-settled rule of law requires that the agent shall be paid his compensation when he procures a purchaser who is acceptable to the principal, and ready, able, and willing to buy on the agent's terms, though, in fact, the sale be not ultimately consummated; provided its consummation is prevented by the fault, refusal, or defective title of the principal."); *Trula Mugford Realty v. Lethco*, No. 03A01-9709-CV-00412, 1998 WL 128848, at *3 (Tenn. Ct. App. Mar. 24, 1998) ("The listing agent was totally without blame in the failure of the sale to close. It had done everything it was required to do in order to receive its commission. The commission sought—$9,999.99—is within the percentage compensation provided for in the contract, and the plaintiff is entitled to it.").[8] Defendant does not explain why the contract being unfair or unreasonable (in his opinion) entitles him to dismissal of the Amended Complaint.

---

[8] Defendant tries to distinguish the cases cited by Plaintiff for this principle by indicating that those cases involved a seller who backed out of a *contract* with a purchaser, whereas Defendant had no purchase contract in the case at hand. However, the Listing Agreement, as noted, does not require a purchase contract for commission to be due. The circumstances under which a commission is owed is a matter of contract, and so the Court must look to the Listing Agreement to determine what event(s) entitled Plaintiff to a commission. *Mande Realty v. Deerhead Resort, Inc.*, No. 87-9-II, 1988 WL 5694, at *2; *Hillsboro Plaza Enterprises*, 860 S.W.2d at 47.

On a separate note, Defendant claims that Plaintiff has not alleged plausible damages, as the purchase price was "highly speculative." (Doc. No. 14-1 at 11). The case cited by Defendant is inapposite. There, the court found a contract unenforceable when there were no "mutually agreed upon terms relating to the scope of the work, the cost, and the time for performance" and the agreement was essentially "to pay whatever the designer charged." *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). In contrast, here, the Letter of Intent estimates the enterprise to be valued at $6.5 million, sets forth a payment schedule, and contemplates that the purchase price could be adjusted up or down based on the net working capital at closing. (Doc. No. 11-2). The Listing Agreement provides the formulas used for calculating a commission. (Doc. No. 11-1). Therefore, the Court finds that Plaintiff has plausibly alleged damages that are not speculative.

Therefore, the Court finds that Plaintiff has plausibly alleged that he found a "willing buyer" and that he is entitled to damages. Defendant has advanced no argument that shows the Court that 1) the contract is unambiguous such that it can be interpreted as a matter of law on a motion to dismiss, and 2) that Plaintiff has failed to plausibly allege a breach of contract. The Court does not resolve what the term "willing buyer" entails at this juncture.

For the reasons discussed herein, the Court therefore will deny Defendant's Motion.

## CONCLUSION

For the reasons discussed herein, the Motion will be denied.

An appropriate order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE